174 So. 542

**MILLER et al. v. SCOTT.**

**7 Div. 241.**

Court of Appeals of Alabama.

April 6, 1937.

Rehearing Denied May 11, 1937.

John D. Bibb and W. D. DeBardelaben, both of Anniston, for appellants.

Jas. L. Carter, of Anniston, for appellee.

RICE, Judge.

The complaint, upon which appellee recovered judgment in the court below, consisted of but a single count, charging, essentially to our decision, as follows: "Plaintiff avers that the said James P. Holland, acting as the defendant's agent, came to the residence of her husband in the city of Anniston, Alabama on, to-wit, about the 20th day of June, 1935, and unlawfully and forcefully attempted to enter the room in which the plaintiff was confined with illness, with knowledge of same on part of Defendant's servant or by reasonable effort he should have known, and while then and there standing in the doorway then and there the said James P. Holland used violent, insulting, impolite and indecent language toward the plaintiff and calling her a liar and charging that her husband had borrowed money from his company which had not been repaid and threatened to garnishee her husband and to take her furniture out of the house for the husband's debt unless payment was made to him then and there at said time and place."

The evidence in support of said complaint with the possible exception of that with regard to said Holland's knowledge of appellee's illness—not here material—consisted solely of the testimony of appellee, from which we quote the pertinent parts, to wit: "I know Mr. J. P. Holland. * * * When he came to my house, I was laying across the bed. The first thing that attracted my attention was I heard the screen to the front door bumping. The living room is the front room, and the room I was in was just across the living room. That is where I was when I heard the screen door bumping. * * * I heard a terrible noise at the front door just like anyone would take hold of a screen door and bump it back and forth. The wooden door opened from the inside, and the screen door opened from the outside. Then I went to the front door and opened it, and when I opened the wooden door he opened the screen door and butted right on in. He spoke and asked me if Mr. Scott was there, and I told him he was not there. He said he was from the Personal Finance Company, and wanted to see Mr. Scott. He asked me why Mr.

Scott had not been up to see him, and I said it would not do any good for him to come to see him, and he asked me why it would not do any good, and I told him he was not working, and he said he was working and had a good job and was making good, and said he was going to garnishee his wages if he did not come up to see him, and I said go ahead and garnishee him because he was not working, and he said, 'You need not talk too smart, because we can take your furniture,' and he said he was getting tired of those little tales and lies about him not working because he was working and making good. He had his hat on. He did not have any manners and acted as though he was drunk. I have seen a drunk person. He did not have any manners about him, but I could not say whether he was drinking or not, because I did not smell any. He did not push against the door. Whenever he opened the screen door and I opened the wooden door, he just butted right on in. He was there about three minutes, and after he left I went on back and laid down on the bed. * * * No one was present there at the house that day but me when he came. * * * I was dressed when Mr. Holland came that day. You go right into my living room from my front porch, and right straight through the living room into the bed room. I got up from the bed in my bed room and came right straight through the living room to my front door, and Mr. Holland stood there in the door and talked to me. He got just inside of the door. I was standing there with my hand on the door, and he was standing there between me and the screen door talking. * * * I was laying across the bed when he came, and my bed room door was open. I do not have a door bell, and did not have one at that time. * * * My husband had been staying with me along just previous to the time that Mr. Holland came there * * * he had been looking after me and staying with me because I was sick, but he was off somewhere at that particular time. At the time of this occurrence, he was in the employment of the Lengel Fencil Company. * * * When Mr. Holland was down there * * * and had this conversation with me. I went back where I was. I went back to bed. I was laying across the bed when he came, and after he talked with me and left then I went back to bed. I do not remember how long I continued laying across the

bed that way. I do not remember whether it was the rest of the day or not. * * * When Mr. Holland came down there, he introduced himself as coming from the Personal Finance Company. I do not remember just exactly what he said, but he spoke to me and said, 'I am from the Personal Finance Company,' and asked my why Mr. Scott had not been up to see him."

Appellee's counsel stoutly contends that the facts shown—assuming the truth of appellee's testimony—bring the case squarely within the rule of the decision in Engle v. Simmons, 148 Ala. 92, 41 So. 1023, 7 L.R.A.(N.S.) 96, 121 Am.St.Rep. 59, 12 Ann.Cas. 740. But whether the fact that here there was no evidence of a command to Holland to "immediately leave appellee's premises" would distinguish this case from the Engle v. Simmons Case, we will not bother to decide.

For, as we view the situation, the judgment must be reversed—putting aside *all* other questions presented—on account of the refusal to give the general affirmative charge requested by appellants because of a failure of the probata to correspond with, or to support, the allegata, and this in a matter of "substantive right of recovery."

It seems well settled that if the acts constituting plaintiff's cause of action are alleged *conjunctively,* they must all be proved. Western Ry. of Ala. v. McPherson, 146 Ala. 427, 40 So. 934, 936. In the opinion in this McPherson Case the court used the following language: "The complaint, *unnecessarily it may be,* averred several acts of negligence on the part of the engineer *in the conjunctive* form. In this state of the pleading it was incumbent on the plaintiff to *prove all of the acts averred.*" (Italics supplied by us).

Here, plaintiff (appellee) averred, as can be seen, conjunctively, that Holland, defendants' agent (1) "unlawfully and forcefully attempted to enter the room in which the plaintiff was confined with illness," and (2) "while then and there standing in the doorway then and there * * * used violent, insulting, impolite and indecent language toward the plaintiff and (3) calling her a liar etc. * * *"

If it could be said that what plaintiff testifies Holland said to her was, by its nature, "violent, insulting, impolite and indecent," or if the language used—"he

was getting tired of those little tales and lies about him not working, because he was working and making good"—could by any sort of construction be considered the equivalent of "calling *plaintiff* a liar," yet, we search in vain, as *we* read the testimony, for any that tends to show that Holland "unlawfully and forcefully attempted to enter the room in which the plaintiff was confined with illness."

The proof simply failed.

And for the reason hereinabove mentioned, the judgment is reversed and the cause remanded.

Reversed and remanded.